UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DFR APPAREL CO., INC., | Case No. 2:11-cv-01406-APG-CWH |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART TRIPLE SEVEN PROMOTIONAL PRODUCTS, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| TRIPLE SEVEN PROMOTIONAL PRODUCTS, INC., TRIPLE SEVEN PROMOTIONAL PRODUCTS, INC., DECO WEST, INC., | (Dkt. No. 46) |
| Defendants. | |

DFR entered into a contract to purchase a large quantity of specialty glassware from Triple Seven. Triple Seven allegedly delivered the glassware late, and with substantial defects. DFR sued Triple Seven for breach of contract, quantum meruit, breach of the covenant of good faith and fair dealing, and various tort claims. Triple Seven now moves for summary judgment on all of DFR's claims. I agree Triple Seven is entitled to judgment as a matter of law on the tort claims. But Triple Seven has failed to establish a lack of genuine dispute as to DFR's claims for breach of contract, quantum meruit, and breach of the covenant of good faith and fair dealing.[1]

I.  **BACKGROUND**

DFR is a "middle-man" company that purchases products from suppliers on behalf of DFR's customers. In early 2010, DFR entered into a contract to provide Christmas-themed glassware to one of its customers, Hub Folding Box Company.[2] DFR then entered into negotiations with supplier Triple Seven for purchase of the glassware for Hub.[3]

---

[1] Triple Seven states it "seeks summary judgment as to all claims alleged against it." (Dkt. #46, at 2.) But in its motion, Triple Seven fails to address DFR's claim for breach of the covenant of good faith and fair dealing. I therefore do not address this claim, and deny Triple Seven's motion as to this claim.

[2] (Dkt. #46, Exh. 2, 23:22-24.)

[3] (*Id.* at 24:3-12.)

In March of 2010, DFR submitted a purchase order to Triple Seven to purchase roughly 170,000 pieces of glassware.[4] After the purchase order was signed, Triple Seven provided DFR with small sample batches to ensure the glasses would meet DFR's and Hub's needs.[5] DFR complained of defects in several of the sample batches. Eventually, DFR and Triple Seven agreed to change the specifications of the glasses to address DFR's complaints. The parties cancelled the March, 2010 purchase order and entered into a second purchase order which incorporated the new specifications: Purchase Order 21085.[6] Purchase Order 21085 called for Triple Seven to deliver DFR's entire order of 170,000 glasses to Hub by July 30, 2010.[7] Purchase Order 21085 included specifications for the glasses, and stated that glass dimensions were to be "within Industry Standards."[8]

After reviewing additional sample batches, both DFR and Hub approved the glassware and Triple Seven arranged delivery of the full order.[9] Triple Seven delivered the glasses to Hub in four shipments with final delivery on September 13, 2010.[10] Upon receipt, Hub rejected approximately 89,500 of the glasses because they allegedly contained manufacturing defects. Triple Seven transported the rejected glasses to a warehouse in Las Vegas.[11] Over the course of two days DFR inspected samples of the glasses Hub had rejected, and allegedly found various defects in the glasses such as protrusions and other deformities caused by the manufacturing process.[12] Triple Seven apparently maintains possession of the 89,500 glasses rejected by Hub, despite that DFR paid for the order in full.

---

[4] (Dkt. #46, Exh. 3.)
[5] (Dkt. #46, Exh. 2, 23:22-24.)
[6] (Dkt. #46, Exh. 4.)
[7] (*Id.*)
[8] (*Id.*)
[9] (Dkt. #46, Exh. 2, 89-90.)
[10] *Id.* at 97.
[11] (*Id.*)
[12] (*Id.* at 94:9-12.)

II.  DISCUSSION

　　A. Legal Standard—Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.[13]  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[14]  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law.[15]  In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party.[16]

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.[17]  Once the moving party satisfies those requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."[18]  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists,"[19] and "must do more than simply show that there is some metaphysical doubt as to the material facts."[20]  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be

---

[13] *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).
[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).
[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).
[16] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).
[17] *Celotex*, 477 U.S. at 323.
[18] *Anderson*, 477 U.S. at 256.
[19] *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991),
[20] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

insufficient."[21] The court may consider only evidence which might be admissible at trial in ruling on a motion for summary judgment.[22]

### B. Analysis

Triple Seven seeks summary judgment on DFR's claims of (1) breach of contract, (2) consequential damages; (3) quantum meruit, and (4) various torts. DFR has provided evidence showing Triple Seven delivered the glassware late and in a defective state; it has thus created a genuine issue of material fact as to its breach of contract, consequential damages, and quantum meruit claims. But DFR failed to rebut Triple Seven's evidence establishing no genuine dispute of facts material to DFR's tort claims.

#### i. Breach of contract

Triple Seven that DFR's breach of contract claim should fail because DFR has not retained an expert. Triple Seven suggests, without support, that only expert testimony can adequately establish its glasses violated the "industry standard" term in Purchase Order 21085. Triple Seven reasons that because DFR has not yet provided expert testimony opining on the applicable "industry standards," it is impossible for DFR to establish breach.

Triple Seven's logic is flawed for several reasons. First, Triple Seven provides no authority requiring expert opinion testimony to establish "industry standards" in a case such as this. Second, Purchase Order 21085 states that only the dimensions of the glasses were required to be within "industry standards." This limitation does not appear to apply to other defects—such as a protrusion—or to the timeliness of delivery.[23] Third, DFR has provided evidence from which a reasonable jury could find breach.[24] For example, DFR provides evidence of significant defects

---

[21] *Anderson*, 477 U.S. at 252.

[22] Fed. R. Civ. P. 56(c).

[23] Triple Seven suggests that the parties' contract "required the glassware to be supplied 'within industry standards.'" (Dkt. #59, at 5.) But this is not what the final purchase order specifies. The operative purchase only mentions "industry standards" in relation to the glassware "dimensions." (See Dkt. #46. Exh. 4.)

[24] (Dkt. # 56, at 4-6.) DFR's brief occasionally cites to the wrong deposition transcript or provides an incorrect transcript location. But I prefer to rule on the merits, and I will not grant summary judgment based solely on DFR's poor citation practices.

4

in Triple Seven's glasses, such as protrusions that caused a safety hazard.[25] While Triple Seven suggests DFR's evidence only relates to defects in the sample batches, the deposition testimony of Richard Aramony states these defects were present in the full shipments.[26] Moreover, Triple Seven does not appear to dispute that it delivered the glasses over a month after the delivery date the parties agreed to in Purchase Order 21085.[27] I find DFR has raised genuine issues regarding the facts material to its breach of contract claim.

      *ii. Consequential damages*

Triple Seven argues that if DFR's breach of contract claim survives, DFR should be precluded from recovering consequential damages. To be recoverable, consequential damages must have been reasonably foreseeable when a contract was formed.[28] DFR argues it is entitled to consequential damages because its relationship with Hub was damaged by Triple Seven's late delivery of defective glasses, and the damage was foreseeable because Triple Seven knew, from the date of the purchase order, that DFR was buying the glasses for Hub.[29] Triple Seven counters it cannot be liable for consequential damages because (1) the parties' contract did not "specify terms regarding a continuing relationship" with Hub, and (2) DFR cannot provide evidence that Triple Seven knew "of other projects DFR was involved in with Hub."[30]

I disagree with Triple Seven. Triple Seven knew DFR was merely a distributor for the glass. Purchase Order 21085 stated delivery was to Hub,[31] and DFR has provided additional evidence indicating Triple Seven knew DFR was buying the glasses for Hub.[32] Triple Seven

---

[25] (Dkt. #46, Exh. 2, 94:9-12.)

[26] (Dkt. #46, Exh. 2, 94:9-12; 100-03.)

[27] (Dkt. # 59, at 4.) (stating the product was delivered in September); (Dkt. #46, Exh. 2, 97:1-13.)

[28] *Clark County School District v. Rolling Plains*, 117 Nev. 101, 106 (2001) (internal citations omitted) (disapproved on other grounds).

[29] (Dkt. #56, at 6-7.)

[30] (Dkt. #46, at 11.)

[31] (Dkt. #46. Exh. 4.)

[32] (Dkt. #46, at 11.)

reasonably could have foreseen that providing defective glasses, over a month after the contracted-for delivery date, may result in DFR losing goodwill with its customer, and thus additional business.[33] Courts have confirmed that this type of harm to a distributor's goodwill with its customers may be a cognizable form of consequential damages.[34] Triple Seven provided no authority suggesting DFR must prove Triple Seven was aware of specific future deals between DFR and Hub to recover consequential damages. I therefore find that genuine issues of material fact exist regarding DFR's consequential damages claim.

### iii. Quantum Meruit

Triple Seven argues DFR cannot seek quantum meruit or unjust enrichment because the existence of a written contract precludes a claim for these sorts of equitable remedies.[35] While I agree a plaintiff may not recover under both theories with regard to the same transaction, at this stage DFR is free to seek both equitable remedies and breach of contract in the alternative. Should the parties' contract be found unenforceable or invalid, DFR may assert an unjust enrichment or quantum meruit claim[36]

### iv. Tort claims

Triple Seven contends DFR has insufficient evidence to support its tort claims. As an initial matter, DFR failed to respond to Triple Seven's arguments addressing the claims for

---

[33] *See Consol. Data Terminals v. Applied Digital Data Sys., Inc.*, 708 F.2d 385, 394 (9th Cir. 1983) ("Knowing that CDT was a distributor of computer equipment, ADDS had reason to know that if it supplied poor quality merchandise that failed to conform to product specifications, CDT would suffer a loss of goodwill with its customers because the customers would blame CDT for the product failures, and would become more reluctant to buy equipment from CDT in the future.").

[34] (*Id.*)

[35] (Dkt. # 46, at 12.)

[36] *WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 2:10-CV-00661-GMN, 2013 WL 6858788 (D. Nev. Dec. 27, 2013), appeal dismissed (May 12, 2014) (holding that where a plaintiff claimed breach of contract and unjust enrichment in the alternative, and the court later found the contract unenforceable, the plaintiff was free to pursue unjust enrichment despite that it had sued for breach of the contract); *Drover v. LG Electronics USA, Inc.*, 2:12-CV-510 JCM VCF, 2012 WL 5198467 (D. Nev. Oct. 18, 2012) reconsideration denied, 2:12-CV-510 JCM VCF, 2013 WL 2476171 (D. Nev. June 7, 2013) (holding same).

conversion and intentional interference with contract and economic relationship. Generally, a party's failure to respond to any or all of a part of a motion may constitute consent to granting the motion.[37] But in the context of summary judgment, I still must ensure Triple Seven has met its burden under Federal Rule of Civil Procedure 56 to establish a lack of genuine dispute as to all material facts related to these claims.[38]

### 1. Conversion

A conversion "traditionally involves wrongful taking and carrying away of something tangible."[39] Money is not usually considered a "tangible" good subject to conversion, but even in circumstances where courts recognize an exception, the money must have been either "wrongfully received by the party charged with conversion, or [the] party [must have been] under obligation to return the specific money to the party claiming it."[40] DFR alleges in support of its conversion claim that Triple Seven has failed to "reimburse" DFR's money paid under the parties' contract.[41] Triple Seven argues there is no evidence it "wrongfully" appropriated DFR's payment.[42] Nor is there evidence Triple Seven had an obligation to return DFR's "specific" money—such as the case where money is held in an escrow account. Triple Seven has met its burden, and DFR has failed to provide any evidence establishing a genuine issue of material fact as to its conversion claim. Triple Seven is entitled to summary judgment on this claim.

### 2. Fraud and fraudulent inducement

To establish fraud, DFR must prove by clear and convincing evidence: (1) Triple Seven made a false representation, (2) Triple Seven knew the representation was false, (3) Triple Seven intended to induce DFR to rely on the false statements, (4) DFR justifiably relied upon the

---

[37] LR 7-2(d). *See also Southern Nevada Shell Dealers Ass'n v. Shell Oil Co.*, 725 F.Supp. 1104, 1119 (D.Nev. 1989).

[38] *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

[39] *Reliance Ins. Co. v. U.S. Bank of Washington, N.A.*, 143 F.3d 502, 506 (9th Cir. 1998).

[40] *Id.*

[41] (Dkt. #1, ¶¶ 40-43.)

[42] In fact in its Complaint, DFR implicitly concedes it willingly paid Triple Seven. *Id.*

misrepresentation, and (5) DFR was damaged from the reliance.[43]  "Fraud is never presumed; it must be clearly and satisfactorily proved."[44]

DFR fails to point to sufficient evidence from which a reasonable jury could find Triple Seven committed any sort of fraud against DFR.[45]  DFR claims Triple Seven fraudulently induced it to enter into the purchase order by "knowingly misrepresenting" its experience with sourcing glassware and by hiding the glass producer's financial problems.[46]  In support of these allegations, DFR cites inadmissible opinion testimony from one of DFR's own employees,[47] and testimony from Triple Seven's employee stating that if he could have done the deal over again he would have utilized a different source for the glass.[48]  This falls far short of creating a genuine dispute that Triple Seven committed the intentional tort of fraud or fraudulent inducement.  DFR fails to point to specific false statements Triple Seven made to DFR; DFR fails to provide any evidence DFR knew any of its statements were false when made; DFR fails to provide evidence that it relied on any allegedly false representation; and DFR fails to provide evidence that any such reliance caused damage.  Triple Seven is entitled to judgment as a matter of law on DFR's fraud and fraudulent inducement claims.

### 3. Intentional interference with a business relationship or contract

---

[43] *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.,* 120 Nev. 277, 290-91, 89 P.3d 1009, 1018 (2004).

[44] *Id.*

[45] DFR disputes whether its employee conceded its fraud claim in a deposition, and largely ignores Triple Seven's argument that DFR has failed to provide evidence meeting the elements of fraud. (Dkt. #56, at 9.)

[46] (Dkt. #56, at 9.)

[47] DFR cites its own testimony about whether Triple Seven's employees had sufficient skill and expertise—unsupported by any sort of foundation or personal knowledge.  I cannot consider this sort of evidence in the context of a motion for summary judgment. *See Orr v. Bank of America,* 285 F.3d 764, 778 (9th Cir. 2002).

[48] (Dkt. #56, at 9.)  DFR appears to have mistakenly cited to its own deposition testimony, while intending to cite to the deposition of Triple Seven's employee.  I assume this was an error, and reviewed both transcripts at the locations cited.

DFR's claims for intentional interference with contract and intentional interference with prospective economic advantage both require proof that Triple Seven intended to interfere with DFR's relationship with Hub.[49] In its Complaint, DFR nakedly asserts Triple Seven "intentionally" interfered with DFR's contract with Hub.[50] But as pointed out by Triple Seven, there is no evidence before me suggesting Triple Seven intended to disrupt DFR's relationship with Hub in any manner. Absent sufficient evidence on the intent element, DFR's intentional interference claims must fail.[51]

### III.   CONCLUSION

IT IS THEREFORE ORDERED that Defendant Triple Seven's Motion for Summary Judgment is GRANTED IN PART. Judgment is entered in favor of Triple Seven as to DFR's Third Claim of Fraud in the Inducement, Fourth Claim of Fraud, Fifth Claim of Conversion, and Sixth Claim of Intentional Interference with Contracts and Prospective Economic Relations. The motion is DENIED as to DFR's First Claim of Breach of Contract, Second Claim of Quantum Meruit, and Seventh Claim of Breach of the Covenant of Good Faith and Fair Dealing.

DATED THIS 30th day of September, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[49] *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274 (2003); *Leavitt v. Leisure Sports, Inc.*, 103 Nev. 81, 88 (1987).

[50] (Dkt. #1, ¶45.)

[51] Triple Seven also argues DFR's tort claims are barred by the economic loss doctrine. However, given my disposition of those claims, I need not reach that issue.